Martin **HOYER**, Appellant,

v.

**UNITED STATES of America,**
Appellee.

No. 15289.

United States Court of Appeals
Eighth Circuit.

June 21, 1955.

John F. Lord, Mandan, N. D. (Lord, Ulmer & Murphy, Mandan, N. D., on the brief), for appellant.

Ralph B. Maxwell, Asst. U. S. Atty., Fargo, N. D. (Robert Vogel, U. S. Atty., Fargo, N. D., on the brief), for appellee.

Before GARDNER, Chief Judge, and JOHNSEN and VAN OOSTERHOUT, Circuit Judges.

GARDNER, Chief Judge.

This is an appeal from a judgment convicting appellant on two counts of an indictment which charged him with the crime of attempting to defeat and evade a large part of the income taxes due and owing by him in violation of Section 145(b) of Title 26 U.S.C. In the course of this opinion we shall refer to appellant as defendant. This indictment contained three counts, the counts referring respectively to the calendar years 1946, 1947 and 1948 and also jointly indicted one Chester Ferguson who at the time covered by the indictment was employed by defendant as bookkeepeer and accountant. Count One of the indictment reads as follows:

"That on or about the 15th day of January, 1947, in the District of North Dakota, one Martin Hoyer and one Chester Ferguson did wilfully and knowingly attempt to defeat and evade the income tax due and owing by the said Martin Hoyer to the United States of America for the calendar year 1946 by filing and causing to be filed with the Collector of Internal Revenue for the Internal Revenue Collection District of North Dakota, at Fargo, North Dakota, a false and fraudulent income tax-return wherein they stated that the

business operations of the said Martin Hoyer for said year resulted in a loss in the sum of $3,103.33, and that the said Martin Hoyer owed no income tax for said year, whereas, as they then and there well knew, his net income for the said calendar year was the sum of $10,347.61, upon which said net income he owed to the United States of America an income tax in the sum of $1,818.57."

So far as here pertinent Count Two was substantially identical with Count One except as to the year covered and the amount of alleged income and income tax involved.

Defendant at the times here involved was engaged in farming on a large scale, producing potatoes, grain and cattle. For the year 1946 he reported as the result of his farming operations a loss of $3,103.33, and for the year 1947 as the result of these operations he reported a loss of $9,973.63. At the trial government accountants testified that for the year 1946 he had a taxable income of $10,347.61 and for the year 1947 he had a taxable income of $20,866.76. Defendant kept no regular books of account and the government witnesses based their testimony upon an investigation of defendant's bank accounts, cancelled checks and other documentary evidence, employing the so-called receipts and disbursements method.

At the close of the government's evidence in chief and again at the close of all of the evidence produced, defendant challenged the sufficiency of the evidence by interposing a motion for acquittal. These motions were overruled and the case was submitted to the jury on instructions to which no exceptions were saved. The jury found both defendants guilty on Counts One and Two and not guilty on Count Three.

From the judgment entered defendant prosecutes this appeal, in which defendant Ferguson does not join, seeking reversal on substantially the following grounds: (1) the trial court erred in receiving in evidence the government's Exhibit 1, and the government's Ex-

hibit 31; (2) the trial court erred in receiving in evidence the government's Exhibits 32, 33 and 34; (3) the trial court erred in receiving in evidence the government's Exhibit 35; (4) the trial court erred in denying the motions of the appellant to dismiss the case at the close of the government's case and at the close of the entire case.

At the very outset it should be observed that the brief of appellant has been prepared in total disregard of the rules of this court so far as reversal is sought on the ground of alleged errors in the reception of evidence. Rule 11(b), referring to what the brief shall contain, provides among other things as follows:

"A concise statement of the case in so far as is necessary for the court to understand and decide the points to be argued in the brief, giving the pages of the printed record where each fact stated can be found and verified. If a point relates to the admission or exclusion of evidence, the statement shall quote the evidence referred to, and any objections or other equivalent action taken relative thereto, together with the rulings of the court thereon, giving the pages of the printed record on which the quotations appear."

Neither in the statement of the case as printed in the brief nor in the points to be argued will be found a quotation of the evidence objected to, nor the objections thereto, nor the ruling of the court thereon, nor a reference to the pages of the record where the quotations appear. The points to be argued contain no references to the printed record but at best constitute an invitation to search the record for error.

■■ This is an appellate court and criminal cases are not here tried de novo and alleged errors sought here to be reviewed should be pointed out and traced to concrete rulings of the trial court in the manner provided by the rules of this court. Anderson v. Federal Cartridge Corporation, 8 Cir., 156 F.2d 681; Cohen

v. United States, 8 Cir., 142 F.2d 861; Zumwalt v. Gardner, 8 Cir., 160 F.2d 298. The record is such as to warrant us in declining to consider in detail the various rulings of the court on the admissibility of evidence here complained of but in view of the importance of the case we have concluded to consider counsels' arguments to the extent of satisfying ourselves that the trial of the defendant has not resulted in a manifest miscarriage of justice.

The government offered in evidence defendant's income tax return for the year 1945 and it was admitted in evidence over the objection that it was immaterial, being without the period covered in the indictment, that it was an attempt "to prove something incorrectly which it cannot prove correctly", and that it was prejudicial. At the time of admitting the exhibit the court admonished the jury that the defendant was not charged with any offense connected with his income tax return for the year 1945, and again in his instructions to the jury the jury was very emphatically advised to the same effect as follows:

"You will recall that Exhibit No. 1, being the defendant Hoyer's tax return for the year 1945, was admitted in evidence, although the defendants are not charged in this indictment with having committed a crime with reference to the income tax return covering the defendant Hoyer's business operations for the year 1945. It was offered for two purposes:

"First, that the income tax return for 1945 showed a business loss of $766.60, and that this loss was carried over into the year 1946 and was used as a deduction therein, whereas the Government claims that during the year 1945 the defendant Hoyer did not sustain a loss. That is one of the claimed errors by the Government with reference to the 1946 tax return.

"The second theory upon which Plaintiff's Exhibit No. 1 was admitted is that it might have some bearing upon the intent of the defendants. Evidence of other occurrences or acts of a similar nature are only admissible in criminal cases where motive, intent or guilty knowledge is in issue, such as it is in this case. You are to consider the evidence with reference to the year 1945 only on the element of intent insofar as the charges in the three counts in the indictment are concerned and should disregard such evidence for all other purposes excepting insofar as it may be applicable to the alleged business loss. You must keep in mind that the defendants are on trial only upon the charges set out in the three counts in the indictment; that is, with reference to the income tax returns for the years 1946, 1947 and 1948."

Defendant chiefly relied upon the fact that he was uneducated, that he kept no regular set of books and that if there were errors in his income tax returns they were due to ignorance or mistake rather than to any purpose on his part to defeat or evade any part of his income taxes. It was incumbent upon the government to prove that defendant wilfully and knowingly attempted to defeat and evade a substantial part of the income taxes justly due from him, and it proposed to prove not only that he had committed the offense charged in the indictment but that he had committed an identically similar offense for the year 1945. Insofar as the exhibit tended to show a false return made in 1945 it was competent as bearing upon the question of fraudulent intent. Neff v. United States, 8 Cir., 105 F.2d 688; Leeby v. United States, 8 Cir., 192 F.2d 331; Lisansky v. United States, 4 Cir., 31 F.2d 846, 67 A.L.R. 67. The exhibit was therefore admissible on the question of intent. It was also admissible on the further ground that it was necessary to prove that a claimed loss from defendant's operations in 1945 was false because that claimed loss was carried forward and claimed in the years covered by the indictment. It is, of course, true, as

argued by appellant, that proof of another similar crime is not admissible for the purpose of proving the particular crime charged, but where it is incumbent to prove motive, intent or absence of mistake or accident, such evidence is admissible. The offense which the exhibit tended to prove was closely connected with the offenses charged and in such circumstances the evidence is admissible even though it tends to prove an offense for which the defendant is not being tried. In connection with the offer in evidence of defendant's income tax return for 1945 there was offered Exhibit 31, which summarized defendant's receipts and disbursements for the year 1945. What has been said with reference to the admissibility of the income tax return for 1945 is equally applicable to the admissibility of Exhibit 31. Both exhibits were properly admitted in evidence.

■ Exhibits 32, 33 and 34 were summarizations prepared on the receipts and disbursements method by government accountants for the years 1946, 1947 and 1948 respectively. Before they were offered in evidence there was introduced evidence constituting the sources from which the summarizations had been prepared by government accountants. This basic evidence consisted of bank liability ledger sheets, checking account ledger sheets, deposit slips, transcripts of cancelled checks, cancelled checks including one for $12,693.70 and the tax returns made by the defendant for the years of 1945, 1946, 1947 and 1948. The government witnesses testified that based upon the documentary evidence introduced they had prepared, on the receipts and disbursements method, Exhibits 32, 33 and 34 which are referred to as summarizations for the years covered by the indictment. These exhibits so compiled and prepared purported to show the correct net income of the defendant for the years covered by the indictment. They were prepared by experts from documentary evidence introduced and from oral testimony. As the documentary evidence had already been introduced counsel for defendant had ample opportunity to ex-amine it and to cross-examine the expert as to the basic testimony and his calculations based thereon. The evidence was clearly admissible. Hanson v. United States, 8 Cir., 186 F.2d 61; Cave v. United States, 8 Cir., 159 F.2d 464; United States v. Kelley, 2 Cir., 105 F.2d 912; United States v. Johnson, 319 U.S. 503, 63 S.Ct. 1233, 87 L.Ed. 1546. The documentary evidence presented a complicated situation and required elaborate compilations which could not have been made by the jury. It is also to be noted in this connection that the court advised the jury that the testimony of the experts was advisory and need not be accepted by them as a verity.

■ Defendant took the witness stand in his own behalf and in the course of his testimony elaborated to some extent on the history of his activities and his financial transactions. He testified in effect, among other things, that in the 1930's during the drought years he raised practically no crops and had to sell one farm in order to keep the home place; that in 1938 he lost the home farm; that good years followed and he was able to repurchase his home place and in 1942 all of the property he owned was free and clear; that he had $20,000.00 worth of potatoes in storage and was in a financial position to retire at that time. He further testified that he thought all his tax returns were correct and that if there were mistakes they were honest ones made accidentally. In rebuttal the government offered in evidence Exhibit 35 which was a certified record of the income taxes paid by and assessed to the defendant for the years 1938 to 1948 inclusive. This exhibit disclosed on its face that during the period 1939, 1940, 1941 and 1942 defendant filed two nontaxable returns and for two years filed no tax returns whatever; that for 1944 and 1945 defendant filed non-taxable returns; that for 1946, 1947 and 1948 defendant filed non-taxable returns and that for 1943 defendant filed a tax return and paid a tax of $2.48. It was later determined that defendant's tax for the year 1943 was some 280 times as

much as he had shown on his return, and an additional tax of $706.31, plus interest amounting to $107.01, was assessed against defendant and paid. We agree with the contention of counsel for the government that:

"Failure to file tax returns and the filing of non-taxable tax returns during the period, particularly in view of his testimony he had made enough money to warrant consideration of retirement at a time when he was approximately fifty-four years of age, definitely had a bearing on the question of intent and constituted proper evidence to be considered by the jury in determining the credibility of the testimony of the defendant affecting the non-taxable returns made by him during the years covered by the indictment."

In Leeby v. United States, supra [192 F.2d 334], where similar testimony had been admitted over objection we said, inter alia:

"His returns for prior years would have some bearing on the question of his intent and also his credibility in testifying that he had not intended to underestimate his income."

We think the court did not abuse its discretion in admitting this testimony.

It is finally contended that the court erred in denying defendant's motion for acquittal interposed at the close of the government's evidence in chief and again at the close of all the evidence. After the court had denied defendant's motion for acquittal interposed at the close of the government's evidence in chief, he took the witness stand in his own behalf and introduced evidence in his own defense. This was a waiver of his motion interposed at the close of the government's evidence in chief.

In view of the fact that the jury found the defendant guilty, we must, in considering the sufficiency of the evidence to sustain the verdict, view the evidence in a light most favorable to the government. We must assume that all conflicts in the evidence have been resolved in favor of the government and the government as the prevailing party is entitled to the benefit of all such favorable inferences as may reasonably be drawn from the facts proven. It is here urged that there was no substantial proof that the defendant wilfully and knowingly attempted to defeat or evade his income taxes. The court very carefully instructed the jury that wilfullness and intentional fraud were necessary ingredients of the offense charged and that unless the proof convinced the jury beyond a reasonable doubt that defendant acted with the wilful intent to defraud the government they should find him not guilty, even though he had in fact failed to truthfully report his income for the years in question. The existence of intent, motive or wilfullness is a question of fact which may be proved by direct or circumstantial evidence, and, as we have heretofore observed in this opinion, evidence on the question of intent, where that is material, may take a wider range than is allowed in support of other issues, otherwise there would often be no means to disclose the purpose of the act charged in which the very gist of the offense may consist. It is not our purpose to review in detail the various circumstances which we think the jury might have considered as establishing intent. The defendant was a successful operator and accustomed to dealing in substantial financial transactions. The jury might well have believed that he understood the value of money and yet it is to be observed that in 1946 he understated his gross receipts by nearly $40,000.00, and in 1947 by nearly $20,000.00. He appreciated that in the years concerned he was making "good money" and he so stated to government witness Anderson. Just how he could be making "good money" to the extent that he contemplated retiring, and yet could in good faith report no net income was a circumstance that might well have been considered by the jury. While it is asserted by counsel for defendant that he cooperated with the investigating officers

in producing his books and records, the record shows that he did not produce all his available books and records when they were asked for but some books were tardily produced after the officers discovered their existence. Other circumstances worthy of note are the following: (1) in 1946 no report was made of income deposited in two personal bank accounts; (2) no report was made of business receipts deposited in the business accounts for the last three months of 1946; (3) no report was made of income deposited in one personal bank account in 1947; (4) no report was made of the largest single grain sale check received in 1947, in the sum of $12,693.70.

We think the jury might well have concluded that these omissions were not inadvertent. We conclude that the contention that the motion for acquittal made at the close of all the testimony should have been granted is wholly without merit. A consideration of the whole record convinces us that the defendant had a fair trial and that no prejudicial error was committed by the trial court. The judgment appealed from is therefore affirmed.